IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 10, 2012

## STATE OF TENNESSEE v. GEORGE LEE JONES

**Appeal from the Circuit Court for Madison County**
**No. 10-760      Donald H. Allen, Judge**

**No. W2011-02144-CCA-R3-CD  - Filed August 6, 2012**

The defendant, George Lee Jones, was convicted by a Madison County Circuit Court jury of aggravated burglary, a Class C felony, and theft under $500, a Class A misdemeanor, and was sentenced to an effective term of ten years in the Department of Correction. On appeal, he challenges the sufficiency of the convicting evidence. After review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and CAMILLE R. MCMULLEN, JJ., joined.

Gregory D. Gookin, Assistant Public Defender (on appeal); and Roger Staton, Jackson, Tennessee (at trial), for the appellant, George Lee Jones.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Senior Counsel; James G. (Jerry) Woodall, District Attorney General; and Shaun A. Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

The defendant was indicted on charges of aggravated burglary and theft under $500 after he was spotted at a vacant duplex loading items into his truck.

The State's proof at trial revealed that Marvin Reynolds, "the victim," was the owner of a rental duplex located at 131 Elizabeth Street in Jackson, Tennessee, which was unoccupied on August 28, 2010. On that date, a friend of the victim's who lived next door

to the duplex informed the victim that someone was removing property from the duplex. In response, the victim went to the duplex, which was "[r]ight around the corner" from his residence, where he met with Officer Kevin Speck of the Jackson Police Department and made a burglary report. The victim said that he did not give anyone permission to enter the duplex or take anything from it.

Inside the duplex, the victim discovered that a wall heater, space heater, and the refrigerator were missing. The hot water heater had been damaged and looked as though whoever had taken the other items "planned on coming back to get it." The victim had paid $165 for the refrigerator three years earlier and approximately $165 for each of the two heaters. The broken lines to the hot water heater caused water damage to the floor resulting in a $460 repair bill.

At the duplex, Officer Speck observed signs of forced entry and received information that two men were seen loading items from the duplex into a red pickup truck with a dent in the left quarter panel. He put out a "be on the lookout" report for the red truck, and officers subsequently stopped a vehicle matching that description about a half-mile north of the duplex approximately fifteen minutes later. The defendant and a Mr. White were the occupants of the truck. The defendant admitted that he had been to the duplex with a man named Danny and had removed a refrigerator from it. Mr. White was ruled out as a suspect and released. Investigator Frank Cagle with the Jackson Police Department was called to the scene, and the defendant told him that he had taken the refrigerator to his mother's house at nearby 125 Gate Street.

Investigator Cagle placed the defendant in the back of his patrol car and proceeded to the defendant's mother's house where a family gathering was taking place. Someone at the house opened the gate into the fenced backyard for Investigator Cagle and pointed out the refrigerator. The victim was called to the house, and he identified his property and took possession of it. The wall heater and space heater were never recovered.

The defendant identified the other man involved in the burglary as Danny Ellison. Investigator Cagle attempted to locate Ellison for three days to charge him with the same offenses, but he was unable to place Ellison at the scene so he discontinued the search. Investigator Cagle interviewed Harvey Donaldson, who lived next door to the victim's duplex, and Donaldson told him that he saw two African-American men, one tall and thin and the other heavyset, remove a refrigerator and some wall heaters from the duplex and load them into a red pickup truck with a large dent on the side. Donaldson was able to identify the defendant as one of the perpetrators but not Ellison.

The defendant offered proof at trial from Danny Ellison who explained that he had purchased a refrigerator from a man named Brian for twenty dollars and asked the defendant to help him move it. The refrigerator was located in a house on Elizabeth Street. According to Ellison, the doors to the house were open as he was told they would be, and he and the defendant moved the refrigerator and loaded it onto a truck and took it to the defendant's house. Ellison explained that the reason he stored the refrigerator at the defendant's mother's house was because he was planning to sell the refrigerator to a used appliance store, but it was closed that day. He later learned that the defendant had been arrested for stealing the refrigerator. Ellison discovered who owned the duplex and went to explain the situation to the victim, a conversation denied by the victim. He said that he paid the victim forty dollars to drop the charges against the defendant, a claim also denied by the victim. He further said that he went to the jail to see if there was a warrant for his arrest, but he did not go the Jackson Police Department to discuss the matter with anyone else.

The defendant also testified on his own behalf. He stated that Ellison asked him for assistance in moving an appliance, and he obliged. When they arrived at a house on Elizabeth Street, the side door was open and the refrigerator was unplugged. They loaded the refrigerator into his truck, took it to his house, and placed it in his fenced backyard. Soon thereafter, while the defendant and White were en route to a parts store, the defendant was stopped by the police. The defendant told the officer that he had helped someone move something out of a house but denied that he stole anything. He told another officer that the refrigerator was in the backyard of his mother's house. The defendant testified that he did not know that Ellison did not own the refrigerator and that, after finding out that the victim was the true owner, he and Ellison went to talk to the victim and gave him forty dollars.

Following the conclusion of the proof, the jury convicted the defendant of aggravated burglary and theft under $500 as charged in the indictment.

## ANALYSIS

On appeal, the defendant challenges the sufficiency of the convicting evidence, arguing that he did not enter the duplex with any criminal intent. When the sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). The same standard applies

whether the finding of guilt is predicated upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

A criminal offense may be established entirely by circumstantial evidence. State v. Majors, 318 S.W.3d 850, 857 (Tenn. 2010). It is for the jury to determine the weight to be given the circumstantial evidence and the extent to which the circumstances are consistent with the guilt of the defendant and inconsistent with his innocence. State v. James, 315 S.W.3d 440, 456 (Tenn. 2010). In addition, the State does not have the duty to exclude every other reasonable hypothesis except that of the defendant's guilt in order to obtain a conviction based solely on circumstantial evidence. See State v. Dorantes, 331 S.W.3d 370, 380-81 (Tenn. 2011) (adopting the federal standard of review for cases in which the evidence is entirely circumstantial).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

For the aggravated burglary conviction, the State had to prove beyond a reasonable doubt that the defendant entered a habitation without the effective consent of the owner and with the intent to commit a felony, theft, or assault. Tenn Code Ann. §§ 39-14-402(a)(1), -403(a). For the theft under $500 conviction, the State had to prove beyond a reasonable doubt that the defendant, with the intent to deprive the owner of property, knowingly

-4-

obtained or exercised control over property without the owner's effective consent and that the value of the property was $500 or less. Id. §§ 39-14-103(a), -105(1).

Again, the defendant asserts that the evidence supporting his convictions is insufficient because he did not enter the duplex with the intent to commit theft. He admits that he entered the duplex and removed the refrigerator but claims that he was only helping his friend, Danny Ellison, remove an item he purchased. However, in the light most favorable to the State, the evidence shows that the defendant forcibly entered the victim's duplex and stole a wall heater, space heater, and a refrigerator without the victim's permission. The defendant then stored the refrigerator in the backyard of his mother's house. The jury heard Ellison's and the defendant's explanations as to why they removed the refrigerator and stored it at the defendant's mother's house and, as was its prerogative, did not accredit their testimonies. The defendant is not entitled to relief.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
ALAN E. GLENN, JUDGE